SERGEANTS BENEVOLENT ASSOCIATION

ANNUITY PLAN

JUNE 25, 2003

TABLE OF CONTENTS

SECTION I—PURPOSE ................................................................................................................. 3

SECTION II—DEFINITIONS ....................................................................................................... 4

SECTION III—PATICIPATION AND VESTING ....................................................................... 9

SECTION IV—CONTRIBUTIONS ............................................................................................... 9

SECTION V—ACCOUNTS .......................................................................................................... 10

SECTION VI—VALUATION ....................................................................................................... 10

SECTION VII—EXPENSES ......................................................................................................... 11

SECTION VIII—ELIGIBILITY FOR BENEFITS ..................................................................... 11

SECTION IX—DISTRIBUTIONS ............................................................................................... 13

SECTION X—PAYMENT OF BENEFITS .................................................................................. 15

SECTION XI—BENEFICIARIES ............................................................................................... 17

SECTION XII—AMENDMENT, TERMINATION AND MERGERS .................................... 18

SECTION XIII—PLAN INVESTMENTS ................................................................................... 19

SECTION XIV—GENERAL PROVISIONS ............................................................................... 21

THE SERGEANTS BENEVOLENT ASSOCIATION ANNUITY PLAN, EFFECTIVE AS OF June 25, 2003, by and between the Board of Trustees, Sergeants Benevolent Association ("Trustees") and the City of New York ("City").

### WITNESSETH

WHEREAS, the Sergeants Benevolent Association Annuity Plan and Trust Agreement (the "Plan") was originally established effective July 1, 1993, for the exclusive benefit of its eligible Employees and their Beneficiaries; and

WHEREAS, it is the intention of the Trustees that the Plan shall meet the qualification requirements under Section 401(a) of the Internal Revenue Code of 1986, as amended (the "Code") and that the Trust created thereunder shall be tax-exempt under Section 501(a) of the Code; and

WHEREAS, the Plan is a governmental Plan, as that term is defined in Section 414(d) of the Code; and

WHEREAS, the Trustees are empowered to amend the Plan in whole or in part, at any time and from time to time; and

WHEREAS, it has been determined advisable to redraft the entire Plan and any amendments thereto to provide for self-direction of participant benefits under the Plan; and

NOW THEREFORE, the Trustees having designated their approval of this redraft of the Plan pursuant to action taken by the Trustees on June 25, 2003, IT IS HEREBY AGREED by and between the parties as follows:

### SECTION I
### PURPOSE

1.1     On the day and year first written above, the Trustees adopt this amended and restated Annuity Plan for the exclusive benefit of those Employees who qualify as Participants under the Plan and for their Beneficiaries.

1.2     The provisions of this Plan shall apply only to an Employee who terminates employment on or after the Effective Date listed above. The rights and benefits, if any, of a former Employee shall be determined in accordance with the provisions of the Plan in effect on the date his employment terminated, except as otherwise specifically provided in the Plan or as otherwise required by applicable law or regulation.

1.3     The provisions of this Plan constitute the entire understanding of the Trustees and shall supercede all prior agreements, understandings and negotiations, both written and oral.

## SECTION II

### DEFINITIONS

Wherever used in the Plan, the following words and phrases shall have the meanings continued in this Section 2 unless a different meaning is plainly required by the context. Whenever used herein, the masculine gender shall be deemed to include the feminine, and the singular term shall be deemed to include the plural.

2.1    **Account**

"Account" shall mean an account maintained for each Participant pursuant to Section 5.1 hereof, to which all contributions are allocated.

2.2    **Account Balance**

"Account Balance" shall mean the value of an Account as of any Valuation Date after adjustments for investment gains and losses, and expenses made in accordance with Section 6 hereof.

2.3    **Accumulated Shared Value**

"Accumulated Shared Value" shall mean the amount in an Individual Account at the next Valuation Date following the date of a Participant's retirement, death, resignation, dismissal, transfer, superannuation, or any other special case, or the next Valuation Date following the date a withdrawal application of an affiliated Participant is received at the Plan office.

2.4    **Affiliated Participant**

"Affiliated Participant" shall mean a former Participant who has elected to continue participation in the Plan and whose election has been approved and become effective.

2.5    **Agreement or Collective Bargaining Agreement**

"Agreement" or "Collective Bargaining Agreement" Collective Bargaining shall mean any Agreement entered into between the Employer and the Union from time to time, providing for contributions to the Plan.

2.6    **Annuitant**

"Annuitant" shall mean a Participant who receives a benefit from the Fund.

2.7    **Annuity Fund or Fund**

"Annuity Fund" or "Fund" shall mean the Sergeants Benevolent Association Annuity Fund established under the related Trust Agreement and its trust estate.

2.8    **Annuity Fund Office or Fund Office**

"Annuity Fund Office" or "Fund Office" shall mean the offices of the Annuity Fund whose present address is 35 Worth Street, New York, NY 10007.

2.9    **Annuity Plan or Plan**

"Annuity Plan" or "Plan" shall mean the Sergeants Benevolent Association Annuity Plan as set forth herein, and any subsequent amendment which the Trustees may issue pursuant to Section 12 hereof.

**2.10** **Association**

"Association" shall mean the Sergeants Benevolent Association, Police Department, City of New York.

**2.11** **Beneficiary**

"Beneficiary" shall mean any person, estate or trust entitled to receive any payment under this Plan.

**2.12** **Board of Trustees**

"Board of Trustees" shall mean the Board of Trustees as appointed in accordance with the Trust Agreement.

**2.13** **Business Days**

"Business Days" shall mean the days on which the New York Stock Exchange is open for business.

**2.14** **City**

"City" shall mean the City of New York.

**2.15** **Claims Administrator**

"Claims Administrator" shall mean the person or persons designated by the Trustees to administer claims under the Plan including the Fund Office.

**2.16** **Code**

"Code" shall mean the Internal Revenue Code of 1986, as now in effect or as hereafter amended. All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

**2.17** **Compensation**

"Compensation" shall mean an Employee's annual rate of pay, excluding overtime or bonuses, but in no event more than $200,000 (as adjusted for cost-of-living in accordance with Section 401(a)(17) of the Code). For Plan Years beginning on and after January 1, 2001, for purposes of applying the limitations described in this Section 2.17 of the Plan, Compensation paid or made available during such plan years shall include elective amounts that are not includible in the gross income of the Employee by reason of Code Section 132(f)(4).

**2.18** **Contribution**

"Contribution" shall mean the amount required or agreed to be contributed on behalf of a Participant to the Annuity Fund by Employer pursuant to an Agreement and any Rollover Contribution.

**2.19** **Covered Employment**

"Covered Employment" shall mean work performed by certain Members under an Agreement, member employer addendum, participation agreement or other written agreement requiring contributions to the Annuity Fund.

**2.20** **Department**

"Department" shall mean the Police Department of the City of New York

2.21 **Disability**

"Disability" shall mean, with respect to a Member, a total and permanent occupational disability that prevents a Member from performing services. With respect to an Employee, an inability to perform duties of employment as would constitute a disability for receiving disability benefits under the Federal Social Security Act. Disability shall be determined by the Trustees, in their sole discretion.

2.22 **Effective Date**

"Effective Date" of this amended and restated Plan shall mean June 25, 2003.

2.23 **Employee**

"Employee" shall mean any person employed by the Employer in the title of Sergeant whom contributions are or should have been made to this Fund.

2.24 **Employer**

"Employer" shall mean the City of New York.

2.25 **Employer Contributions**

"Employer Contributions" shall mean those contributions made to the Plan by the Employer on behalf of a Participant pursuant to Section 4.1.

2.26 **Fund**

"Fund" shall mean the Trust Fund of the Sergeants Benevolent Association Annuity Fund.

2.27 **Highly Compensated Employee**

"Highly Compensated Employee" shall mean an Employee or Participant who performs services for Employer during the Plan Year and who received Compensation from the Employer during the preceding Plan Year in excess of $90,000 (or such other amount authorized by the Secretary of the Treasury). In determining who is a Highly Compensated Employee, the Employer does not make the top-paid group election.

2.28 **Hour of Service**

"Hour of Service" shall mean with respect to a person, each hour, if any, that may be credited to him or her.

2.29 **Mandatory Withdrawal Age**

"Mandatory Withdrawal Age" shall mean age 70.

2.30 **Member**

"Member" shall mean any person employed by the Employer in the title of Sergeant whom contributions are or should have been made to this Fund.

2.31 **Net Investment Yield**

"Net Investment Yield" shall mean the investment income earned during each period for which the valuation is being made minus the administrative and other expenses of the

Fund. The "Net Investment Yield" is obtained by dividing such investment income by the total amount in all of the Individual Accounts. The fraction so obtained is multiplied by the amount in each Individual Account.

2.32  **Normal Retirement Age**

"Normal Retirement Age" shall mean the date on which the Participant attains age sixty-three (63).

2.33  **Participant**

"Participant" shall mean any person for whom an Individual Account has been established.

2.34  **Plan**

"Plan" shall mean the Sergeants Benevolent Association Annuity Fund Plan, as amended from time to time.

2.35  **Plan Administrator**

"Plan Administrator" shall mean the Board of Trustees or such other person or committee designated in writing by the Board of Trustees to act as such.

2.36  **Plan Year**

"Plan Year" shall mean each twelve (12) consecutive-month period beginning on the first day of July and ending on the last day of June.

2.37  **Qualified Domestic Relations Order**

"Qualified Domestic Relations Order" or "QDRO" shall mean a domestic relations order as defined in accordance with Section 414(p) of the Code.

2.38  **Reciprocal Agreement**

"Reciprocal Agreement" shall mean an agreement entered into by the Trustees with the trustees of an annuity fund in another jurisdiction providing for the transfer of contributions to this Trust on behalf of Participants of this Plan working under collective bargaining agreements in the other jurisdiction.

2.39  **Regulations**

"Regulations" shall mean the applicable regulations issued, under the Code or other applicable law, by the Internal Revenue Service ("IRS"), the Department of Labor ("DOL") or any other governmental authority and shall include any proposed or temporary regulations or rules promulgated by such authorities pending the issuance of final regulations.

2.40  **Related Organizations**

"Related Organizations" shall mean the following organizations:

A) Sergeants Benevolent Association Welfare Fund;

B) Sergeants Benevolent Association Annuity Fund;

C) Any other group or organization, with a sufficient nexus to the Association as determined by the Trustees in their sole discretion, which is approved for participation in the Annuity Fund.

**2.41  Rollover Contribution**

"Rollover Contribution" shall mean the benefit of a Participant or an Employee under another plan qualified under Section 401(a) of the Code, which the Participant or Employee transfers or rolls over to this Plan in accordance with the provisions of Section 4.2.

**2.42  Sponsor**

"Sponsor" shall mean the Board of Trustees of the Sergeants Benevolent Association Annuity Fund.

**2.43  Spouse**

"Spouse" shall mean a person to whom a Participant is considered married under applicable law and, if and to the extent provided in a Qualified Domestic Relations Order (within the meaning of Section 414(Q) of the Code), a Participant's former Spouse.

**2.44  Trust Agreement**

"Trust Agreement" or "Trust" shall mean the legal entity created under the Plan under which the assets of the Plan are held, invested and reinvested, and known as the Agreement and Declaration of Trust of the Sergeants Benevolent Association Annuity Fund, as amended from time to time.

**2.45  Trust Fund**

"Trust Fund" shall mean the Trust Fund of the Sergeants Benevolent Association

**2.46  Trustee**

"Trustee" or "Trustees" shall mean a member or members of the Board of Trustees of the Sergeants Benevolent Association Annuity Fund, and any successor Trustee.

**2.47  Union**

"Union" shall mean the Sergeants Benevolent Association.

**2.48  Valuation Date**

"Valuation Date" shall mean the last business day of each calendar quarter.

**2.49  Withdrawal**

"Withdrawal" shall mean the complete withdrawal of a Participant from any type of employment in the Uniformed Force of the Department by retirement, resignation, dismissal, or death.

Other terms are defined where they are used herein.

## SECTION III

## PARTICIPATION AND VESTING

**3.1    Eligibility of Participants**

All Members working in Covered Employment within the jurisdiction of the Union shall be immediately eligible to participate in this Plan beginning with the date the first Hour of Service is completed.

**3.2    Re-commencement of Participation**

A Member or Employee who has terminated from Covered Employment or employment, as applicable, shall resume participation under the Plan beginning on the first hour of the month following his or her return to Covered Employment or employment, as applicable.

**3.3    Vesting**

Each Participant shall be at all times completely and non-forfeitably vested in his or her Account.

## SECTION IV

## CONTRIBUTIONS

**4.1    Employer Contributions**

(a)    Participants who are Members working in Covered Employment shall receive Contributions from the Employer which are based upon the Member's working time in Covered Employment as set forth in the applicable Collective Bargaining Agreements between the Union and the Employer.

**4.2    Rollover Contributions**

A Participant may elect to make a Rollover Contribution to the Plan from a qualified plan described in Section 401(a) or 403(a) of the Code, to an annuity contract described in Section 403(b) of the Code, or an eligible plan under Section 457(b) of the Code. The Participant shall make the Rollover Contribution by delivering, or causing to be delivered, an amount in cash which constitutes such Rollover Contribution to the Trustees at such time or time and in such manner as shall be permitted by the Plan Administrator, provided that the Plan Administrator receives written certification from the Participant and such other documentation that the Plan Administrator deems appropriate to determine if such contribution is eligible for rollover to the Plan. The Participant shall designate the proportion of his Rollover Contribution which shall be placed in each investment fund. Notwithstanding any other provision of this Plan, under no circumstances shall any funds attributable to any Participant's Rollover Contribution be used in any way as a basis for the allocation or reallocation of any Employer Contributions or forfeitures. At all times the interest of such Participant in his or her Rollover Contribution shall be fully (100%) vested.

**4.3    Participant Contributions**

This Plan is to be funded entirely with Employer Contributions and Rollover Contributions. Participants shall not make any contributions to the Annuity Fund.

## SECTION V

## ACCOUNTS

5.1 **Establishment of Accounts for Participants**

An Account has been established for each Participant under the Plan. As of each Valuation Date, an Account shall be established for each newly eligible Participant. The Trustees shall maintain or cause to be maintained an Account in the name of each Participant, to which all contributions to or distributions from the Trust on behalf of the Participant shall be credited or debited. Each Account shall be separately accounted for as herein provided, but all Accounts may be invested by the Trustees as a single fund.

The fact that Accounts are established and valued as of each Valuation Date shall not give any Participant or others any right, title or interest in the Annuity Fund or its assets, or in the Account, except at the time or times and upon the terms and conditions herein provided; provided, however that a Participant's interest in his or her Account is nonforfeitable from the time that such Account is established.

5.2 **Termination of a Participant's Account**

An Account shall be considered terminated on the later of (i) the first day of the month in which payment of the entire Account Balance is made; or (ii) the first day of the month in which the Account Balance becomes zero.

## SECTION VI

## VALUATION

6.1 **Valuation of the Trust Fund**

As of each Valuation Date, Accounts shall be valued. Such valuation shall be conclusive and binding upon all persons having an interest in the Trust Fund in the form of an Account.

6.2 **Valuation of Participant Accounts**

As of each Valuation Date and in accordance with the provisions of Section 6.1 above, Accounts of each Participant shall be adjusted to reflect: Contributions made to the Account in accordance with SECTION IV of the Plan, withdrawals, profits and losses from investments, and all other transactions occurring immediately preceding such Valuation Date. Such adjustments to the Accounts shall be made with respect to the preceding Valuation Date by (i) deducting from each said Account the total of all payments made from the Account; (ii) adding to or deducting from each said Account the gains or losses, attributable to the investment fund or funds selected by the Participant as of the last preceding Valuation Date; (iii) adding to each said Account the total of all Contributions made to said Account and (iv) adding to each said Account the total of all loan repayments (principal and interest), if any, made to said Account.

## SECTION VII
### EXPENSES

7.1 **Plan Administration Expenses**

The expenses of administering the Plan, including (i) any fees and expenses of the Claims Administrator, Plan Administrator and of the Trustees for the performance of their duties under the Plan and Trust, (ii) the expenses incurred by the Trustees in the performance of their duties under the Plan (including reasonable compensation for any legal counsel, certified public accountants, consultants, and agents and costs of services rendered in respect of the Plan), and (iii) all other proper charges and disbursements of the Trustees (including settlement of claims or legal actions approved by counsel to the Plan) may be paid out of the Trust Fund.

7.2 **Trust Expenses**

Brokerage fees, transfer taxes and any other expenses incident to the purchase or sale of securities by the Trustees shall be deemed to be part of the cost of such securities, and deducted in computing the proceeds therefrom. Taxes, if any, of any and all kinds whatsoever which are levied or assessed on any assets held or income received by the Trustees shall also be charged against the earnings of the Trust in accordance with this Section 7.2.

## SECTION VIII
### ELIGIBILITY FOR BENEFITS

8.1 **Eligibility for Benefits**

The benefits of a Participant shall not be distributed until his or her termination of service, death, or attainment of Early Retirement Age or Normal Retirement Age, as defined in Section 8.2(b), and then only to the extent provided and in the manner set forth in Section 9. Each Participant shall at all times be completely and nonforfeitably vested in his or her Account.

8.2 **Eligibility for Benefits Upon Termination of Service, Disability or Retirement of a Participant**

(a)     Upon the termination of a Participant's service for any reason other than death including by reason of Disability, the Participant may make an application to receive payment of the Account Balance in his or her Account in accordance with this Section 8.2. Upon approval of the application, the Plan Administrator shall disburse the Account Balance in the Participant's Account as of the Valuation Date immediately preceding such disbursement. Such payment shall be made by one of the methods of distribution described in Section 9.

(b)     <u>Definitions</u>

For the purposes of this section, the following definitions shall apply:

11

A Member shall be deemed to have terminated service when he is no longer employed by the Employer in the title of Sergeant.

An Employee shall be deemed to have terminated service after the passage of one month wherein there have been no Contributions to his or her Participant Account.

A Participant shall be deemed to be retired on his Normal Retirement Age which is the later of (i) attainment of age sixty-three (63) or (ii) the termination of such Participant's service. A Participant shall be deemed retired on his Early Retirement Age which is the later of (i) attainment of age fifty-five (55) or (ii) the termination of such Participant's service.

8.3    **Eligibility for Benefits Upon Death of a Participant**

(a)    Upon the death of a Participant, and receipt of notification and proof of the same by the Plan Administrator and upon applicable for benefits, the Plan Administrator shall disburse the Account Balance in the Participant's Account as of the Valuation Date immediately preceding such disbursement, to the Participant's surviving Spouse or Beneficiary, as the case may be. Such payment shall be made by one of the methods of distribution described in Section 9.

(b)    If a former Participant dies before payment of the full value of his or her Account Balance from the Trust Fund, an amount equal to the value of the unpaid portion thereof as of the Valuation Date immediately preceding disbursement shall be paid to the Participant's surviving Spouse or Beneficiary, as the case may be, from the Trust Fund. Such payment shall be made by one of the methods of distribution described in Section 9.

8.4    **Location of Participant or Beneficiary Unknown and Uncashed or Unclaimed Checks Payable to Participants and Beneficiaries**

(a)    In the event that a distribution is made to a Participant or Beneficiary under the terms of the Plan and after sending a registered letter return receipt requested to the last known mailing address and further diligent effort to ascertain the whereabouts of such Participant or his or her Beneficiary, and after the passage of thirty-six (36) months from the date the distribution became payable, the Participant's Account shall be subject to forfeiture. Thereafter a final effort to locate the Participant or Beneficiary shall be made. If no response is received within six (6) months thereafter, the Participant's Account Balance shall be forfeited. In the event a Participant or Beneficiary is located subsequent to his or her benefit being forfeited, such benefit shall be restored without regard to subsequent earnings or losses.

(b)    Forfeitures may be used to defray the administrative expenses of the Annuity Fund; provided that payment of benefits shall be made to any Participant or Beneficiary whose Account was forfeited and who thereafter files an application for his or her Account Balance and satisfies the Plan Administrator that he or she is eligible for benefits in the amount of the Participant's or Beneficiary's Account Balance on the date of forfeiture.

8.5    **Qualified Domestic Relations Order**

All rights and benefits, including elections, provided to a Participant in this Plan shall be subject to the rights afforded to any "alternate payee" under a qualified domestic relations order. Furthermore, a distribution to an "alternate payee" shall be permitted if such distribution is authorized by a "qualified domestic relations order", even if the affected Participant has not separated from service and has not reached "earliest retirement age" under the Plan. For the purposes of this Section, "alternate payee", qualified domestic relations order" and "earliest retirement age" shall have the meanings set forth in Section 414(p) of the Code.

SECTION IX

DISTRIBUTIONS

### 9.1    Basic Types of Distributions

(a)    Any benefits accrued and payable under the Plan from an Account shall be paid in one lump sum payment from the Trust Fund in full satisfaction of liability under the Plan.

(b)    In the event a Participant dies prior to the receipt of his or her benefits, such Participant's Spouse or non-spouse Beneficiary if designated in accordance with Section 11.1, as the case may be, may elect, subject to the Code and Regulations, to receive the death benefits payable, if any, according to subparagraph (a) above. Annuity contracts shall be purchased from a major insurance company.

### 9.2    Distribution Requirements

(a)    Distributions may commence at any time after a Participant is eligible to receive a Distribution; provided, however notwithstanding any other provision of the Plan, any benefit payable to a Participant shall commence no later than April 1 of the calendar year following the calendar year in which such Participant attains age seventy and one-half (70 1/2). Such benefit shall be paid, in accordance with requirements of Section 401(a)(9) of the Code and the Regulations thereunder, over a period not extending beyond the life expectancy of such Participant or the joint life expectancies of such Participant and his or her surviving Spouse or Beneficiary, as the case may be.

(b)    If distribution of a Participant's benefit has commenced prior to a Participant's death, and such Participant dies before his or her entire benefit is distributed, distribution of the remaining portion of the Participant's benefit to the Participant's Beneficiary shall be made at least as rapidly as under the method of distribution in effect as of the date of the Participant's death.

(c)    If a Participant dies before distribution of his or her benefit has commenced, distribution to any Beneficiary shall be made on or before December 31 of the calendar year which contains the fifth anniversary of the date of such Participant's death; provided, however that at the Beneficiary's irrevocable election, duly filed with and consented to by the Plan Administrator prior to the applicable commencement date set forth in the following sentence, any distribution to a Beneficiary may be made over a fixed period up to one hundred and twenty (120) months; provided, however such period shall not extend beyond the life expectancy of the Beneficiary. Such distribution shall commence not later than December 31 of the calendar year immediately following the

calendar year in which the Participant died or, in the event that such Beneficiary is the Participant's surviving Spouse, on or before December 31 of the calendar year in which such Participant would have attained age 70 1/2, if later (or, in either case, on any later date prescribed by the Regulations). If such Participant's surviving Spouse dies after such Participant's death but before distributions to such surviving Spouse commence, this Section 9.2 shall be applied to require payment of any further benefits as if such surviving Spouse were the Participant.

(d)     Notwithstanding any provisions of the Plan to the contrary, with respect to distributions under the Plan made for calendar years beginning on or after January 1, 2002, the Plan will apply the minimum distribution requirements of Section 401(a)(9) of the Code in accordance with the regulations under Code Section 401 (a)(9) that were proposed on January 17, 2001. This amendment shall continue in effect until the end of the last calendar year beginning before the effective date of final regulations under Code Section 401(a)(9) or such other date specified in guidance published by the Internal Revenue Service.

9.3     **Application for Benefits**

A Participant must make an application for payment of his or her benefits, in writing, and in such form and manner as prescribed by the Trustees.

In no event, unless the Participant elects otherwise in accordance with the provisions of Section 9.4, shall the payment of benefits to Participant shall begin later than the 60th day after the close of the Plan Year in which the latest of the following occurs:

    (i)     the Participant attains age 65;

    (ii)     the fifth anniversary of the Participant's participation in the Plan; or

    (iii)     the termination of the Participant's service.

provided, however that if the amount of the payment or payments required to commence on the date determined under this Section cannot be ascertained by such date, payment shall commence no later than sixty (60) days after the earliest date on which the amount of such payment can be ascertained under the Plan, or if, as set forth in Section 8.4 of the Plan, it is not possible to locate the Participant and the Participant's Account has been forfeited, payment shall commence or the Participant's Account shall be restored in accordance with Section 8.4 (whichever is applicable) no later than sixty (60) days after the earliest date on which the Participant is located.

9.4     **Consent, Deferral and Settlement of Small Payments**

If a Participant terminates service, no Contributions have been made for such Participant for twelve (12) months and the value of his or her Account is not greater than five thousand dollars ($5,000) at the expiration of such twelve (12) months period, a lump sum distribution of the Account Balance as of the Valuation Date immediately preceding disbursement shall be made to the Participant or Beneficiary, as the case may be; provided, however, that if the Participant notifies the Plan Administrator of his or her desire not to receive such distribution prior to the expiration of such twelve (12) month period, no distribution will be made to the Participant until such time as may be provided under the Plan.

Notwithstanding any other provision of the Plan, to the extent required by the Code and Regulations, if the value of a Participant's Account exceeds five thousand dollars ($5,000), no distribution shall be made to such Participant prior to April 1st of the calendar year following the calendar year in which such Participant attains age seventy and one-half (70 1/2) without the Participant's consent. The consent of the Participant is not required to the extent that a distribution is required to satisfy Section 401(a)(9) or Section 415 of the Code.

The consent of the Participant shall be obtained within the ninety (90) day period ending on the date distribution commences. The Participant shall be advised by the Trustees of the right to defer any distribution until April 1st of the calendar year following the calendar year in which such Participant attains age seventy and one-half (70 1/2). Such notification shall include a general description of the material features and an explanation of the relative values of the optional forms of benefit available under the Plan in a manner that satisfies the notice requirements of Section 417(a)(3) of the Code, and shall be provided no less than thirty (30) and no more than ninety (90) days prior to the date distribution commences. However, distribution may commence less than thirty (30) days after the notice is given, provided, that (i) the Participant is clearly informed that he or she has right to a period of at least thirty (30) days after receiving notice to consider the decision of whether or not to elect a distribution (and, if applicable, a particular distribution option); (ii) the Participant, after receiving notice, affirmatively elects a distribution and (iii) the distribution is one to which Sections 401(a) and 417 of the Code do not apply.

SECTION X

PAYMENT OF BENEFITS

**10.1  Amount of Distribution**

Upon distribution, pursuant to this Section 10, the amount the Participant shall receive, subject to the specific provisions of this Section 10.1, shall be the Account Balance in such Participant's Account which shall be equivalent to the value of such Participant's Account as of the Valuation Date immediately preceding disbursement reduced by such Participant's outstanding loans, if any. A Participant's Account Balance shall be paid in the form elected by the Participant pursuant to Section 9.1 hereof.

**10.2  Distributions in Cash**

Notwithstanding any other provisions of the Plan, all benefits payable under the Plan to a Participant, former Participant or Beneficiary shall be paid from the Trust Fund in cash payable by check or in another form approved by the Trustees.

**10.3  Direct Rollovers**

(a)    Availability of Direct Rollovers

This Section applies to distributions made on or after January 1, 1993. Notwithstanding any provision of the Plan to the contrary that would otherwise limit a Distributee's election under this Section, a Distributee may elect, at the time and in the manner prescribed by the Plan Administrator, to have any portion

of an Eligible rollover distribution paid directly to an Eligible retirement plan specified by the Distributee in a direct rollover.

(b)     Definitions

For purposes of this Section the following definitions shall apply:

(1)     "Eligible rollover distribution" shall mean any distribution of all or any portion of the balance to the credit of the Distributee, except that an eligible rollover distribution does not include: any distribution that is one of a series of substantially equal periodic payments (made not less frequently than annually) for the life (or life expectancy) of the Distributee or joint lives (or life expectancies) of the Distributee and the Distributee's designated beneficiary, or for a specified period of ten years or more; any distribution to the extent such distribution is required under Section 401 (a)(9) of the Code; the portion of any distribution that is not includible in gross income (determined without regard to the exclusion for net unrealized appreciation with respect to employer securities).

(2)     "Eligible retirement plan" shall mean an individual retirement account described in Section 408(a) of the Code, an individual retirement annuity described in Section 408(b) of the Code, or a qualified trust described in Section 401(a) of the Code, that accepts the Distributee's Eligible rollover distribution. However, in the case of an Eligible rollover distribution to the surviving Spouse, an Eligible retirement plan is an individual retirement account or individual retirement annuity. For purposes of the direct rollover provisions in the Plan, an Eligible retirement plan shall also mean an annuity contract described in Section 403(b) of the Code and an eligible plan under Section 457(b) of the Code which is maintained by a state, political subdivision of a state, or any agency or instrumentality of a state or a political subdivision of a state and which agrees to separately account for amounts transferred into such plan from this Plan. The definition of Eligible retirement plan shall also apply in the case of a distribution to a surviving spouse, or to a spouse or former spouse who is the alternate payee under a qualified domestic relations order (as defined in Section 414(p) of the Code).

(3)     "Distributee" shall include a Participant, or former Participant. In addition, the Participant's or former Participant's surviving Spouse and the Participant's or former Participant's Spouse or former Spouse who is the alternate payee under a qualified domestic relations order, as defined in Section 414(p) of the Code, are Distributees with regard to the interest of the Spouse or former Spouse.

(4)     "Direct rollover" shall mean a payment by the plan to the eligible retirement plan specified by the Distributee.

(c) Mandatory Twenty Percent (20%) Withholding

An Eligible rollover distribution as defined in Section 402(f) of the Code which is not rollover over to an Eligible retirement plan under paragraph (a) hereof, is subject to a mandatory withholding of federal income tax in an amount equal to twenty percent (20%) of the distribution. In addition, this distributed benefit may be subject to an additional tax of 10% for early distributions under Section 72(t) of the Code.

An Eligible rollover distribution as defined in Section 402(1) of the Code and Section 10.3(b) hereof may be rolled over to an eligible retirement plan pursuant to this Section 10.3 without being subject to the 20% income tax withholding of this paragraph provided that such transfer is made within 60 days of the distribution.

10.4   **Deferral of Distribution**

Payment of benefits to a Participant may be deferred by the investment manager of the Plan for a maximum of six (6) months from the date that benefits would have commenced for a Participant; provided that in no event may benefits be deferred for a Participant who has applied for benefits as a result of termination of employment, death or Disability.

SECTION XI

BENEFICIARIES

11.1   **Beneficiary Designations**

Each Participant shall file with the Plan Administrator, on a form provided by the Plan Administrator, a written designation of one or more persons as Beneficiary or Beneficiaries who shall be entitled to receive the amount, if any, payable under the Plan upon his or her death. A Participant may, from time to time, revoke or change his or her Beneficiary designation without the consent of any prior Beneficiary by filing a new designation of beneficiary with the Trustees. Notwithstanding the foregoing, if a Participant is married, the Beneficiary of such married Participant shall be his or her Spouse unless a non-spouse Beneficiary is designated and (i) the Participant's Spouse consents, in writing, to such designation, (ii) such designation designates a Beneficiary which may not be changed without spousal consent (or the consent of the spouse expressly permits changes to the designation without a requirement of further consent by the Spouse, and acknowledges that such Spouse had a right to limit such consent to the Beneficiary designated at the time of such consent), (iii) the Spouse's consent acknowledges the effect of such action, and (iv) the consent is witnessed by a notary public. Spousal consent will not be required if it is established to the satisfaction of the Plan Administrator that the consent required may not be obtained because there is no spouse, the Participant is legally separated, because the spouse cannot be located or because of such other circumstances as may be provided by the Regulations. The last such designation received by the Plan Administrator shall be controlling; provided, however that no designation, or change or revocation thereof, shall be effective unless received by the Plan Administrator prior to the Participant's death, and in no event shall a designation be effective as of a date prior to receipt of the same by the Plan Administrator. Once spousal consent has been given, it shall be irrevocable. However, the Participant may at any time revoke his or her designation up to the time of payment of the Account Balance.

17

## 11.2    Provision for the Absence of a Designated Beneficiary

If no Beneficiary designation is in effect at the time of a Participant's death or no Beneficiary survives the Participant, the payment of the amount, if any, payable under the Plan upon his or her death shall be made to the Participant's surviving Spouse, if any, as Beneficiary, or if the Participant has no surviving Spouse, the following persons (if then living) in the following order of priority: (i) natural and adopted children, in equal shares, (ii) parents, (iii) siblings or (iv) the Participant's estate. If the Plan Administrator is in doubt as to the right of any person to receive such amount, the Plan Administrator may retain such amount, without liability for any interest thereon, until the rights thereto are determined, or the Plan Administrator may pay such amount into any court of appropriate jurisdiction and such payment shall be a complete discharge of the liability of the Plan and the Trust thereof.

## SECTION XII
## AMENDMENT, TERMINATION AND MERGERS

### 12.1    Power to Amend or Terminate

(a)    Although it is the present intention of the Trustees to continue this Plan for an indefinite period of time, the Trustees, subject to the provisions of any applicable Collective Bargaining Agreements in force at the time, reserve the right at any time to amend, suspend or terminate this Plan, any Contributions thereunder or the Trust Fund, in whole or in part and for any reason, to adopt any amendment or modification thereto, all without the consent of Employer, Participant or Beneficiary.

(b)    No amendment or modification shall be made which would retroactively impair the rights to any benefit under the Plan which any Participant, Beneficiary or surviving Spouse would otherwise have had at the date of such amendment by reason of the Contributions theretofore made and credited to his or her Account, except as provided below in paragraph (c).

(c)    Subject to the provisions of paragraphs (a) and (b) above, any amendment, modification, suspension or termination of any provisions of the Plan may be made retroactively if necessary or appropriate to qualify or maintain the Plan, the Trust and any contract with an insurance company which may form a part of the Plan as a plan and trust meeting the requirements of Sections 401(a) and 501(a) of the Code or any other applicable section of law and the Regulations issued thereunder.

(d)    Notice of amendment, modification, suspension or termination of the Plan shall be given by the Trustees. All plan amendments shall be in writing and signed by the Trustees.

(e)    Upon termination or partial termination of the Plan, the Accounts of all affected Participants shall be fully and nonforfeitably vested and the Trustees shall distribute the assets remaining in the Trust Fund, after payment of any expenses

properly chargeable thereto, to Participants and Beneficiaries in proportion to the respective Account Balances in each Account.

(f)   In no event shall any part of the funds of the Plan (other than such part as is required to pay taxes, if any, and administrative expenses as provided in Section 7.1) be used for or diverted to any purposes other than for the exclusive benefit of the Participants and their Beneficiaries.

(g)   To the extent no discrimination in value results, any distribution after termination of the Plan may be made in whole or in part in cash, in securities, or other assets in kind, as the Trustees in their sole discretion shall determine. All non-cash distributions shall be valued at the date of distribution.

## 12.2   Power to Merge or Consolidate

The Trustees, subject to the provisions of any applicable Collective Bargaining Agreements in force at the time, reserve the right to merge or consolidate this Plan. In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, the amount of benefit which a Participant would receive upon termination of the successor plan immediately after such merger, consolidation, or transfer shall be no less than the benefit he would have been entitled to receive immediately before the merger, consolidation, or transfer if this Plan had been terminated.

## SECTION XIII
## PLAN INVESTMENTS

### 13.1   Plan Investments

The Sponsor hereby establishes an Annuity Plan for the benefit of eligible employees, on the terms and the conditions described herein.

(a)   All Contributions to the Plan shall be made by Employer in accordance with the applicable Collective Bargaining Agreement, member employer addendums, participation agreements or other written instruments at a stipulated rate per hour. Such rates are not subject to the control of the Trustees and cannot be changed by the Trustees.

(b)   All Contributions from Employer are payable at the Fund Office.

(c)   All Contributions to the Plan shall be deposited in an Account established and maintained for each Participant reflecting his or her interest in investment funds offered under the Plan, and the extent to which such interest reflects Contributions from Employer.

(d)   A Participant shall designate that contributions from Employer be allocated as the Participant shall elect to a specified investment fund or funds offered under the Plan, as designated by the Trustees, from time to time.

(e)   Change of Investment Direction and Transfers Between Investment Funds.

(i)   Any investment direction given by a Participant shall be deemed to be a continuing direction until changed. A Participant may make daily changes

19

to his investment direction with respect to future Contributions by filing the appropriate form with the Plan Administrator.

(ii)    A Participant may make daily transfers of amounts allocated to an investment fund by filing with the Plan Administrator a notice directing that all or a portion of his Account held in one or more funds be transferred to another such fund. The transfer will be made as soon as practicable after the appropriate form is filed with the Plan Administrator and shall be based on the value of the investment fund as of the date as of which such notice is effective. The direction must be in writing on a form provided by the Plan Administrator.

(iii)    A Participant whose participation has terminated may continue to transfer portions of his Account held in one or more funds to another fund as set forth in (ii) above until his Account has been fully distributed.

(f)    Investment Funds

(i)    Maintenance of Separate Investment Funds. The Trustees shall maintain separate investment funds, pursuant to which contributions by Employer shall be invested at the direction of Participants as set forth in paragraphs 4 and 5 above. The earnings from investments in each investment fund shall be reinvested in the same investment fund.

(ii)    Valuation of Investment Accounts. Each Participant's interest in an investment fund shall be maintained in his or her Account as provided in paragraph 4 above to be valued as of each Valuation Date. Once the valuations have been made, the Accounts will be proportionally adjusted for Plan expenses pursuant to Section 7.1 as may be determined by the Trustees from time to time.

(iii)    Former Participants. The Account of a former Participant or Beneficiary shall continue to be subject to adjustment as provided in paragraph (ii) hereof as of each succeeding Valuation Date until such Account has been fully distributed or forfeited.

(iv)    Participant Failure to Provide Investment Instruction. Absent receipt by the Trustees of a direction from the Participant for the investment or reinvestment of such funds, the Trustees shall cause such funds to be invested in an investment fund as the Trustees may designate from time to time as a default investment.

(g)    As soon as practicable, but at least quarterly during the Plan Year and at such other times as the Plan Administrator may determine, there shall be furnished to each Participant, former Participant and Beneficiary who then has a balance in an account a statement, in such form as the Trustees may authorize, showing the current condition of his Account.

(h)    In the event of the Participant's death, the Beneficiary designated in accordance with Section 11 hereof shall direct the investment of the Participant's Account, pursuant to the provisions of this Section 13.

(i)    All Plan assets shall be used exclusively for the following:

     (i)    Payment of Plan benefits to the Participants.

     (ii)    Defraying reasonable expenses of Annuity Plan administration

The Annuity Fund is solely responsible for the payment of all benefits from such Trust Fund and the Trustees shall not be personally liable for such payments, under any circumstances. Further provided that the Annuity Fund shall be responsible for such payments only to the extent of its assets.


## SECTION XIV
## GENERAL PROVISIONS

14.1    **Purpose**

The purpose of this Plan document is to set forth the provisions of the Plan which provide for the payment of benefits. All of the rights offered the Participants hereunder are legally enforceable. All Participants shall be provided with reasonable notification of benefits available under this Plan.

14.2    **Severability**

If any provision of this Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provision, and this Plan shall be construed and enforced as if such provision had not been included.

14.3    **No Waiver or Estoppel**

No term, condition or provision of this Plan shall be deemed to have been waived, and there shall be no estoppel against the enforcement of any. provision of this Plan, except by written instrument of the party charged with such waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future or as to any act other than the one specifically waived.

14.4    **Liability Under the Plan**

The duties and obligations of the Trustees shall be limited to those expressly set forth in this Plan. Notwithstanding any other provision of this Plan, any individual designated a Trustee hereunder shall be indemnified and held harmless by the Annuity Fund to the fullest extent permitted by law against any and all costs, damages, expenses and liabilities including, but not limited to, attorneys' fees and disbursements reasonably incurred by or imposed upon such individual in connection with any claim made against him or her or in which he or she may be involved reason of his or her being, or having been, a Trustee hereunder, to the extent such amounts are not satisfied by fiduciary liability insurance that may or may not be maintained by the Annuity Fund. Further, any Trustee shall be indemnified and held harmless by the Annuity Fund to the fullest extent permitted by law against any and all costs, damages, expenses and liabilities including, but not limited to, attorneys' fees and disbursements reasonably incurred by or imposed upon such person in

connection with any claim made against him or her or in which he or she may be involved by reason of its being, or having been, Trustee hereunder, except liability which is adjudicated to have resulted from the gross negligence or willful misconduct of the Trustee by reason of any action so taken.

14.5    **Named Fiduciaries**

(a)    Subject to Section 14.5(b) the Trustees shall be named fiduciaries of the Plan. Any named fiduciary may employ one or more persons to render advice with respect to any responsibility(ies) allocated to such named fiduciary. Any named fiduciary may designate, in writing, a person other than a named fiduciary to carry out all or a portion of such named fiduciary's allocated fiduciary responsibility(ies) as set forth in a written instrument executed by the named fiduciary, the designated person, and The Sergeants Benevolent Association Annuity Fund. No named fiduciary shall be liable with respect to a breach of fiduciary duty, if such breach was committed before he became a named fiduciary or after he ceases to be a named fiduciary.

The Trustees shall have the sole authority to:

1.    Amend and/or terminate the Plan pursuant to Section 12 hereof;

2.    Make such changes as they deem prudent from time to time in the funding policy of the Plan;

3.    Make such rules as may be necessary for administration of the Plan, construe the Plan subject to its provisions, supply any omissions and reconcile any inconsistencies, make equitable adjustments for any mistakes or errors and decide all questions arising in the interpretation of the Plan; all of which shall be conclusive, final and binding on all parties;

4.    Formulate the claims procedures of the Plan;

5.    Provide a full, fair and final review of any claim for benefits denied by the Claims Administrator in accordance with the Plan's claim procedures;

6.    Retain, at its option, a Claims Administrator to be responsible for the day-day-day administration of the Plan, including payment of claims for benefits;

7.    The Claims Administrator, if any, shall perform the duties specified in any separate Administrative Services Agreement entered into between the Annuity Fund, the terms and provisions of which shall be incorporated herein by reference to the same extent as if herein written;

8.    Retain, at its option, an actuarial or benefit plan consultant to be responsible for any portion of or all day-to-day administration of the Plan, actuarial evaluation, and if desired, assistance in claim determination or denial; and

9.    Retain, at its option, legal counsel for the Plan.

The named fiduciaries shall be deemed to have properly exercised such authority unless it has abused its discretion hereunder by acting arbitrarily and capriciously.

Except for the functions reserved by the Plan to the Trustees exclusively, the Trustees designate the Claims Administrator to control and manage the operation and day-to-day administration of the Plan including the following duties:

1.  Establish, prepare, and maintain all records required for completion of reports to Participants, and to governmental agencies.

2.  Making initial determinations regarding claims for benefits under the Plan (including, but not limited to, the denial of applications for loans or hardship withdrawals). In exercising such responsibilities, the Claims Administrator shall have discretionary authority to initially determine whether and to what extent participants and beneficiaries are entitled to benefits and to construe disputed or doubtful Plan terms.

(b)  The fiduciaries of the Plan may be relieved of liability for any losses that are the result of investment instructions given by a Participant, his Beneficiary, or an alternate payee under a qualified domestic relations order.

## 14.6  Claims Procedures

(a)  Filing A Claim for Benefits

Any request or claim for a benefit payable under the Plan shall be made in writing by a Participant or beneficiary (or an authorized representative of any of them), as the case may be, and shall be delivered to the Claims Administrator. A claim shall be deemed filed when a written communication is received by the Claims Administrator. Upon receipt of the application, the Claims Administrator may request required proof, if any. Such proof must be submitted to the Claims Administrator within forty (40) days from the date of the Claims Administrator's request for such proof. Payment of claim of benefits shall be made when satisfactory proof, if any is required, is received. If the required proof is not submitted within the forty (40) days, the claim shall be denied.

(b)  Timing of Notification of Benefit Determination

The Claims Administrator shall make a determination with respect to an application for benefits within ninety (90) days after receipt of the claim by the Plan unless it is determined that special circumstances require an extension of time for processing the claim, not to exceed an additional ninety (90) days. If such extension is required, the Claims Administrator shall provide written notice of the extension prior to the expiration of the initial 90-day period. The notice of extension shall indicate the special circumstances requiring an extension of time and the date by which the Claims Administrator expects to render a determination with respect to the claim. It is the intent of the Plan to respond to claims promptly.

(c)  Manner and Content of Notification of Benefit Determination

The Claims Administrator shall notify the claimant whether his application has been granted or whether it has been denied in whole or in part. The Claims Administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. The notification shall set forth, in a manner calculated to be understood by the claimant:

(1)   The specific reason or reasons for the adverse benefit determination;

(2)   Reference to the specific provisions of the Plan on which the determination is based;

(3)   A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and

(d)   Appeal of Adverse Benefit Determination

If an adverse benefit determination is made by the Claims Administrator, the claimant (or authorized representative) may request an appeal of such determination by the Trustees (or designated committee). All requests for review must be sent in writing to the Claims Administrator within sixty (60) days after receipt of a notification of adverse benefit determination. In connection with the request for review, the claimant (or authorized representative) may submit written comments, documents, records and other information relating to the claim for benefits. In addition, the claimant will be provided, upon written request and free of charge, with reasonable access to, and copies of, all documents, records and other information relevant to the claimant's claim for benefits, as determined under Labor Regulation Section 2560.503-1. The review by the Trustees (or designated committee) shall take into account all comments, documents, records and other information submitted by the claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination. The Participant's claim for review shall be given a full and fair review.

(e)   Timing of Notification of Benefit Determination on Review

A decision on review shall be made by the Trustees (or a committee designated by the Trustees) at its next regularly scheduled meeting following receipt of the request for review, unless the request is filed less than thirty (30) days prior to the next regularly scheduled meeting, in which case a decision will be made at the second regularly scheduled meeting following receipt of such request for review. If special circumstances require a further extension of time for processing the request for review, a benefit determination shall be made no later than the third meeting following the Plan's receipt of the request for review, in which case the Administrator shall notify the claimant, before the commencement of the extension, of the need for the extension of time and the special circumstances and the date as of which the benefit determination will be made. If the extension is required due to the claimant's failure to submit information necessary to decide the claim, the period for making the determination will be tolled from the date on which the extension notice is sent to the claimant until the date on which the

claimant responds to the Administrator's request for information. The decision of the Trustees (or designated committee) shall be communicated to the claimant in writing within five days after the benefit determination is made.

(f)     Manner and Content of Notification of Benefit Determination on Review

The Claims Administrator shall provide a claimant with written or electronic notification of the benefit determination on review. In the case of an adverse benefit determination, the notification shall set forth in a manner calculated to be understood by the claimant:

(1)    The specific reason or reasons for the adverse benefit determination;

(2)    Reference to the specific provisions of the Plan on which the adverse benefit determination is based;

(g)    Interpretation and Standard of Proof

The Trustees shall be the sole judges of the standard of proof required in any case. In the application and interpretation of any of the provisions of this Plan, the decisions of the Trustees (or its designated committee) shall be final and binding on all parties including, without limitation, Participants, Employer, the Association, and Beneficiaries. Wherever in the Plan the Trustees are given discretionary powers, the Trustees shall exercise such powers in a uniform and nondiscriminatory manner.

**14.7    Trustees Reliance**

The Trustees and Claims Administrator shall be entitled to rely on written representations, consents and revocations submitted by Participants, Spouses, or other parties in making determinations under the Plan and, the Trustees' determinations shall be final and binding, and shall discharge the Annuity Fund and the Trustees from liability to the extent of the payments made. The Trustees and the Annuity Fund shall not be liable under this Plan for duplicate benefits with respect to the same Participant.

**14.8    Distribution to an Incompetent or Minor Participant or Beneficiary**

If the Plan Administrator shall find that any Participant to whom any benefits are payable under this Plan is unable to care for personal affairs (due to mental or physical incapacity), not legally capable of giving valid receipt for payment of benefits, is a minor, or has died and no prior claim has been made by a duly appointed legal guardian or other legal representative, then any payment due the Participant or the estate may be made to any individual with a power of attorney, or sent in the Participant's name to a Spouse, a child, a relative, an institution maintaining or having custody of such Participant or any other person or corporation appearing to the Trustees, in their sole and absolute discretion, to be entitled to payment. Alternatively, the Trustees may, in their discretion, hold such payment, without interest, until a legal representative has been appointed. Any such payment shall fully discharge the Plan and the Trustees of its liability. All claims shall be paid by the Trustees in New York. Benefits shall be paid within 60 days upon receipt of all necessary, supporting documentation for payment determination.

**14.9    Non-alienation of Benefits**

No Participant, Beneficiary or other person entitled to any benefits from this Plan shall have the right to assign, alienate, transfer, encumber, pledge, mortgage, hypothecate, anticipate, or impair in any manner his legal or beneficial interest, or any interest in assets of the Trust, or benefits of this Plan. Any attempts to assign, alienate, transfer, encumber, pledge, mortgage, hypothecate, anticipate, or impair such interest or assets of this Plan shall be void.

Notwithstanding the above, a Participant's benefit may be assigned to an "alternate payee" under a "qualified domestic relations order," both as provided for and defined under Section 414(p) of the Code.

Neither the Trust nor any of the assets thereof, shall be liable for the debts of any Participant or Beneficiary entitled to any benefits under this Plan nor be subject to attachment or execution or process in any court or action or proceeding.

## 14.10   Credit for Qualif ied Military Service

Effective December 12, 1994, notwithstanding any provision of the Plan to the contrary, contributions, benefits and service credit with respect to qualified military service will be provided in accordance with Section 414(u) of the Code.  Liability to make retroactive contributions to the Plan for the returning Employee shall be determined by the Trustees or, if the Trustees do not so determine, liability shall be allocated to the last Employer employing the Employee before the period of military service or, if such Employer is no longer a signatory to an Agreement, then liability shall be allocated to the Plan.

## 14.11   Interest  Payable

Unless specifically provided for herein, no interest shall be payable on any benefits received hereunder by any Participant or Beneficiary.

## 14.12   Notices

Any notice, application, instruction, designation or other form of communication required to be given or submitted by any Participant or Beneficiary shall be in such form as is prescribed from time to time by the Trustees and shall be sent by first-class mail or delivered in person to the Trustees. Any notice, statement, report or other communication from the Trustees to any Participant shall be deemed to have been duly delivered when given to such Participant or mailed first class to such Participant at the Participant's address last appearing on the records of the Plan Administrator or transmitted by electronic media. Each Participant entitled to receive a payment under the Plan shall file in accordance herewith the Participant's complete mailing address and any change thereof. If the Plan Administrator shall be in doubt as to whether payments are being received by the Participant entitled thereto, the Plan Administrator may, by registered mail addressed to such Participant's address last known to the Plan Administrator, notify such Participant that all future payments will be withheld until such Participant submits to the Plan Administrator the proper mailing address and such other information the Plan Administrator may reasonably request.

## 14.13   Information to be  Provided by Participants

Every Participant or Beneficiary shall furnish, at the request of the Plan Administrator any information or proof reasonably required for the administration of the Plan or for the

determination of any matter that the Plan Administrator may legitimately have before it. Such information or proof shall be furnished in the form and manner specified by the Plan Administrator. Failure to furnish such information or proof promptly and in good faith shall be furnished in the form and manner specified by the Plan Administrator. Failure to furnish such information or proof promptly and in good faith shall be sufficient reason for the denial of benefits to such Participant, regardless of whether such Participant is currently receiving benefits, or Beneficiary.

If the Participant or Beneficiary makes a willfully false statement material to his or her application for benefits or furnishes fraudulent information or proof, material to his or her claim, benefits under this Plan may be denied, adjusted, suspended, or discontinued as deemed appropriate by the Trustees under the circumstances. The Trustees shall have the right to recover any benefit payments made in reliance on any willfully false or fraudulent statement, information or proof submitted by the Participant or Beneficiary.

## 14.14 Action of Trustees

The Trustees shall supervise generally the administration of the Fund. Without limiting any other powers that inure to them as Trustees by law, the Trustees shall exercise absolute discretionary authority to determine all matters arising in the administration, interpretation and application of the Fund and the Plan including all questions of coverage, eligibility, and methods of providing or arranging for benefits.

## 14.15 Trustees Exclusive Title and Interest

No person other than the Trustees shall have any right, title or interest in any of the income, or property of any funds received or held by or for the account of the Trust, and no person shall have any right to benefits provided by the Plan except as expressly provided herein.

## 14.16 No Reve rsion to Employer

In no event and under no circumstances shall any of the corpus or assets of the Trust revert to Employer or to the Union.

## 14.17 Collective Bargaining Agree ment

No provision in this Plan shall be construed to modify any Collective Bargaining Agreement.

## 14.18 Legal Pro ceedings

No legal action against the Plan for the recovery of any claim shall be commenced until a Participant has exhausted all of the administrative claims review procedures under this Plan, including a final appeal to the Trustees.

The General Counsel for the Board of Trustees shall be the agent for service of process in any legal action or otherwise. Service of legal process may be made upon the Trustees, the Plan Administrator or on general counsel.

## 14.19 Ef fect of Plan on Employment

The Plan shall not be deemed to constitute a contract of employment between the Annuity Fund and any Participant or Employee or to be consideration or any inducement

for the Employment of any Participant or Employee. Nothing contained in this Plan shall be deemed to give any Participant or Employee the right to be retained in the service of the Annuity Fund or to interfere with the right of such Employer to discharge any Participant or Employee at any time regardless of the effect which such discharge will have upon him or her as a Participant of this Plan.

14.20  **Governing Law**

This Plan shall be construed according to the laws of New York and all provisions, hereof, shall be administered according to the laws of such state.

14.21 **Number and Gender**

When appropriate the singular used in this Plan shall include the plural and the masculine shall include the feminine and vice versa.

14.22  **Headings**

The headings of Sections and paragraphs are for ease of reference only and shall not be construed to limit or modify the detailed provisions hereof.

Dated:  June 25, 2003
        New York, New York

SERGEANTS BENEVOLENT
ASSOCIATION ANNUITY FUND

Edward D. Mullins

Robert Ganley

Robert Johnson

Gary DeRosa

Jerry Leary

Maureen Murphy

Paul A. Capotosto



# Sergeants Benevolent Association Annuity Fund*

## ANNUITY FUND HIGHLIGHTS

The following information contains highlights of the Plan. Please read the entire Summary Plan Description for more details.

### Joining the plan
You will become a participant in the Plan immediately upon your promotion to the rank of Sergeant.

### Employer contributions
The City of New York will make contributions to the Plan on your behalf based on the terms of the collective bargaining agreement with the Sergeants Benevolent Association. The amount contributed is determined by that agreement.

### Managing your investments
Under the Plan, you direct the manner by which your account is invested. For this purpose, the Plan offers a range of investment options.

### Vesting
The amounts credited to your account under the Plan are always 100% vested.

### Retirement
When you retire or otherwise cease covered employment, your account balance will be paid to you or you may elect to have your account transferred to an Individual Retirement Account (IRA) or to another qualified retirement plan. Under certain circumstances, you may also elect to defer distribution of your account.

**IMPORTANT NOTE**
This booklet is called a Summary Plan Description and is intended to provide a brief description of the Plan's features. Complete details of the Plan are contained in the Plan document. If there is a difference between this booklet and the Plan document, the Plan document (available in the Fund Office) will govern. The information provided on taxes is general in nature and may not apply to your personal circumstances. You should consult a tax advisor for more information.

*Please note, the Annuity Fund is not an annuity, but the name of the plan.

## TABLE OF CONTENTS

| | |
|---|---|
| Introduction | 2 |
| Benefits Complete® | 2 |
| Important definitions | 3 |
| Joining the Plan | 4 |
| Managing your investments | 5 |
| Vesting | 6 |
| When will benefits be paid | 6 |
| How will benefits be paid | 6 |
| Promotion to Lieutenant | 7 |
| Death benefit | 7 |
| Other important facts | 8 |
| Statements of your account | 9 |
| Your rights and information | 10 |

This is a Summary Plan Description, which is intended to give you a summary of the major features of the Plan. If there is any inconsistency between the contents of this summary and the Plan document, your rights will be determined from the Plan document and not from this summary.

You, your beneficiaries or legal representative may examine the Plan document and other documents relating to the Plan during regular business hours or by appointment at the Fund Office.

*Participants and beneficiaries should not rely upon any oral description of the Plan because the written terms of the Plan document will always govern.*

## INTRODUCTION

Chances are, you're hoping for a long and fulfilling retirement. A significant part of how rewarding your retirement experience will be depends on how well you have planned for it.

This is the purpose of the Sergeants Benevolent Association Annuity Fund (the "Plan"); namely, to help you accumulate the funds you will need for your retirement. The Plan is one of the best ways for you to accomplish this goal since it provides a basic retirement contribution on your behalf, which will not be subject to income tax until distributed to you following your retirement or other termination of employment. The investment earnings on your account will also accumulate tax-free until distributed from the Plan.

Your personal financial security is one of life's most important objectives. The Union shares your concern and offers the Plan to help you build a strong financial future.

## BENEFITS COMPLETE®

To help with your retirement planning, many features of the Plan are available to you 24 hours a day, seven days a week, over an automated telephone system (800-294-3575), or via the Internet (http://www.bcomplete.com), through *Benefits Complete*. The automated telephone system also allows you access to a Participant Service Representative if you call between the hours of 9:00 AM and 8:00 PM Eastern Time (ET) on any business day the New York Stock Exchange (NYSE) is open ("NYSE business day"). *Benefits Complete* enables you to obtain information about your Plan account, request an account statement, and make changes to your investment elections.

You will receive separate instructions for using *Benefits Complete*. However, you should contact the Fund Office if you have any questions about using this service.

## IMPORTANT DEFINITIONS

**First, let's define the following terms to be used in this summary.**

**Plan:** means the Sergeants Benevolent Association Annuity Fund.

**Plan Year:** means the period in which administrative and financial records of the Plan are maintained. The Plan Year is the 12-month period beginning July 1 and ending June 30.

**Police Department:** means the New York City Police Department.

**Trustees:** means the Board of Trustees of the Plan.

**Union:** means the Sergeants Benevolent Association.

| JOINING THE PLAN | |
|---|---|

**Eligibility**

You will become a participant in the Plan immediately upon your promotion to the rank of Sergeant with the Police Department. You will remain a participant for as long as you are an active member of the Police Department, or until you are promoted or demoted in rank.

You should contact the Fund Office if you have any questions concerning your eligibility to participate in the Plan.

**CONTRIBUTIONS**

*You will automatically become a participant in the Plan upon your promotion to the rank of Sergeant with the Police Department.*

**Employer Contributions:** The City of New York will make a contribution to the Plan on your behalf in an amount determined under the collective bargaining agreement with the Union.

You should contact the Fund Office if you have any questions concerning the calculation of any contributions made on your behalf.

**Account Transfers:** If you were a participant in a similar fund at the PBA or the DEA, shortly after becoming a participant in the Plan, your account in the PBA or DEA Fund will be transferred to the Plan on your behalf.

**Rollover Contributions:** In certain circumstances, you may elect to have benefits earned under another qualified plan transferred or rolled over to your account under this Plan. You should contact *Benefits Complete* if you are interested in making a rollover contribution.

## MANAGING YOUR INVESTMENTS

The Plan offers a range of investment options so you can put your money to work in a number of ways. You may invest your account in individual investment options or in the Portfolios Asset Allocations offered under the Plan.

You work hard for your money. One of the advantages of the Plan is that it lets your money work hard for you. The Plan provides you with a range of investment options. You can invest your account in any of the available options in multiples of 1%. Different investment options may be offered from time to time and you will be informed in advance of any changes.

Additional information concerning the available investment options is provided separately. Prospectuses for any mutual fund options are available through *Benefits Complete*.

### Changing Investment Elections

You may change your investment election for future contributions allocated to your account, and/or your investment election for your existing account balance, through *Benefits Complete*. Any such investment election changes made and confirmed before 4:00 PM ET on any NYSE business day will generally be effective as of the close of that day. A change confirmed on or after 4:00 PM ET, or on weekends or holidays, will generally be effective as of the close of the next NYSE business day. In the event the NYSE closes prior to 4:00 PM ET on any business day, a change made and confirmed before the time the NYSE closes will generally be effective as of the close of that day. A change made or confirmed on or after such closing time will generally be effective as of the close of the next NYSE business day. In the event an investment option does not have sufficient liquidity to meet same day redemption requests, your change will be effective as soon as administratively possible thereafter.

Written confirmation will be mailed to you for each change of your investment election. If you change your investment election with respect to future contributions and your existing account balance, you will receive separate confirmation(s). A confirmation statement will be mailed within two business days of your transaction. You should expect to receive the confirmation within five to seven business days, depending on the U.S. Postal Service. If you fail to receive a confirmation within seven business days, please call *Benefits Complete* and speak with a Participant Service Representative.

## VESTING

You always have 100% ownership of your account under the Plan.

Vesting means ownership. You are always 100% vested (in other words, you have complete ownership) in your account under the Plan (adjusted for investment gains and losses).

## WHEN BENEFITS WILL BE PAID

Upon terminating employment with the Police Department, your account balance will be paid to you or you may elect to have your account transferred directly to an IRA or to another qualified retirement plan. Under certain circumstances, you may also elect to defer distribution of your account.

You may elect to receive distribution of your Plan account upon your termination of employment with the Police Department.

Distribution of your account will be made as soon as administratively practical following the filing of a distribution election form. You may also elect to defer your distribution. You should be aware, however, that distribution of your account must be made or commence no later than April 1 following the year you attain age 70½ or, if later, following the year you terminate employment.

## HOW BENEFITS WILL BE PAID

Distribution of your account will be made in the form of a single-sum payment.

Whenever you receive a distribution from the Plan, it will normally be subject to income taxes. To provide for the resulting taxes, your distribution may be subject to mandatory 20% federal income tax withholding. Under special rules, distributions from this Plan are not subject to New York State or New York City taxes. You may be able to defer income taxes on your distribution by electing to have your distribution paid directly to an IRA or to another qualified retirement plan, however, you will lose the special state and city tax exemptions.

If you are younger than age 59½ when you receive your distribution, any amount you receive may be subject to a 10% federal excise tax (penalty tax) in addition to any applicable federal and state income taxes. However, the 10% penalty tax will not apply to distributions made to your beneficiary in the event of your death or if you transfer your distribution directly to an IRA or to another qualified employer-sponsored retirement plan.

You may obtain a distribution election form from the Fund Office. You will be provided with more information concerning your distribution options when you apply for benefits under the Plan. However, you should contact a tax advisor prior to making your distribution election.

**PROMOTION TO LIEUTENANT**

If you are promoted to Lieutenant, you may leave your account in this Plan or you may elect to have your account transferred to the Lieutenant's Plan. You may obtain a transfer election form from the Fund Office.

**DEATH BENEFIT**

If you die before distribution of your account has commenced, your beneficiary will be entitled to receive the full value of your account.

You may choose anyone to be your beneficiary under the Plan. You make your designation by filing a Beneficiary Designation Form with the Fund Office. However, under federal law, if you are married and wish to name someone other than your spouse as your beneficiary, you may do so only with your spouse's written and notarized consent. If you fail to designate a beneficiary, or if your designated beneficiary dies before you do, the Plan provides that your beneficiary will automatically be your surviving spouse, or, if none, your estate.

Distribution of any death benefit under the Plan will normally be made, in the form of a single-sum payment, as soon as administratively possible following your death.

**OTHER IMPORTANT FACTS**

**Plan Name**
The name of the Plan is the Sergeants Benevolent Association Annuity Fund.

**Plan Number**
The number assigned to the Plan by the Trustees is 001.

**Type of Plan**
This Plan is known as a defined contribution plan.

**Type of Administration**
The Plan is administered by the Board of Trustees. You may contact the Trustees at:

Board of Trustees
Sergeants Benevolent Association Annuity Fund
35 Worth Street
New York, NY 10013
Telephone: (212) 226-2180
EIN: 13-3704953

The current members of the Board of Trustees are:

Edward D. Mullins
Robert Ganley
Robert W. Johnson
Maureen Murphy
Jerry Leary
Gary J. DeRosa
Paul A. Capotosto

**Service of Legal Process**
The Board of Trustees have been designated as agent for service of legal process.

**STATEMENTS OF YOUR ACCOUNT**

**Reports on Your Plan Account**

To help you keep up-to-date on the status of your account, you will receive a statement at the end of each calendar quarter showing:

- the amount contributed to the Plan on your behalf;
- the investment options you have selected;
- the earnings on your account balance; and
- the current value of your account (including any rollover/transfer contributions).

You may also request a statement at any time through *Benefits Complete*.

## HIGHLIGHTS

As a Plan participant you are entitled to:

Examine, without charge, at the Fund Office, the Plan document and certain related reports and documentation;

Obtain copies of the Plan document and certain other Plan information upon written request to the Trustees. The Trustees may impose a reasonable charge for the copies; and

Obtain a statement telling you

(a) the amounts credited to your account under the Plan and
(b) what your benefits would be under the Plan if you stop working as of that statement date.

This statement is not required to be given more than once a year. The Trustees must provide the statement free of charge.

### Your rights and information

As a participant in the Plan, you are entitled to certain rights and protections. All Plan participants shall be entitled to:

• Examine, without charge, at the Fund Office, the Plan document, any insurance contracts, collective bargaining agreements and other related documents.

• Obtain copies of the Plan document and certain other Plan information upon written request to the Trustees. The Trustees may make a reasonable charge for the copies.

• Obtain a statement telling you (a) the amounts credited to your account under the Plan and (b) what your benefits would be under the Plan if you stop working as of that statement date. This statement is not required to be given more than once a year. The Trustees must provide the statement free of charge.

### How do I make a claim for benefits?

We hope there will never be a disagreement as to the amount owed to you under the Plan. However, if there is a disagreement, you must follow the Plan's claims procedure or you may forfeit certain legal rights to contest the decision. You must file any request for benefits in writing. Before filing your request, you or your legal representative may wish to examine any Plan records regarding your claim. This examination may occur only during regular working hours.

If your request is denied, the Trustees will provide you with a written response detailing the reasons for its decision. After receiving this decision, you will have 180 days within which you or your legal representative may file such additional exhibits or written arguments with the Trustees as you deem appropriate. Based upon these materials, the Trustees will review their earlier decision and issue a final written decision. The decision of the Trustees, which have the authority to interpret the Plan and make factual determinations in connection with matters arising under the Plan, is final and binding.

### How will my participation in the Plan affect my IRA?

According to the current federal tax laws, you can continue to maintain IRAs while you are participating in the Plan. See the instructions to Form 1040 or contact your tax advisor for more information.

**HIGHLIGHTS**

### What happens if the Plan is amended or terminated?

The Trustees reserve the right to amend the Plan or to terminate it. However, no amendment can reduce the amount in your account. If the Plan terminates, your account will remain 100% vested, that is, nonforfeitable. The Plan is for the exclusive benefit of its participants and, therefore, money cannot go back to the City of New York or the Union because of the Plan's termination.

Upon termination of the Plan, the Trustees will generally liquidate assets and distribute the value of your account to you (subject to IRS requirements).

### Is there any way I can lose Plan benefits?

Yes, there are a few ways in which you could lose expected benefits:

### • If investments go down in value

The value of your account depends on the performance of your investments under the Plan. Your account balance is subject to both gain and loss due to investment results.

   If you receive a distribution at a time when the value of your investments has declined, you may not receive a distribution that is as large as you had hoped. Also, certain administrative expenses of the Plan may be paid from the Plan's trust fund.

### • If a "Qualified Domestic Relations Order" is received

In general, your account cannot be attached or paid to creditors or to anyone other than yourself. However, under federal law, the Trustees are required to obey a Qualified Domestic Relations Order. This is a decree or order issued by a court that satisfies certain requirements under the Internal Revenue Code. A Qualified Domestic Relations Order may require that all or a portion of your account be paid to your spouse, former spouse, child or other dependent. The Trustees, in accordance with procedures set forth in the law, will determine the validity of any order received and will inform you upon the receipt of any such order affecting you.

### Should I be aware of any other aspects of the Plan?

You should also be aware that the Pension Benefit Guaranty Corporation, a federal agency that insures defined benefit plans, does not insure this type of plan. The government has exempted plans like ours from such insurance because all contributions go directly to your account and you will remain 100% vested in your account if the Plan is ever terminated.

For more information about your investment options, please consult the prospectuses.

LO1905-SPD-0403